1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| SIERRA NATIONAL INSURANCE HOLDINGS, INC., and GEORGIA LEE, as receiver for SIERRA NATIONAL INSURANCE HOLDINGS, INC., <br><br>                    Plaintiffs, <br><br>          v. <br><br> ALTUS FINANCE, S.A., CDR ENTERPRISES, CONSORTIUM DE REALISATION, S.A., MAAF ASSURANCES, MAAF VIE, S.A., CREDIT LYONNAIS, S.A., OMNIUM GENEVE, S.A., FRANCOIS PINAULT, JEAN-CLAUDE SEYS, JEAN-FRANCOIS HENIN, JEAN IRIGOIN, NEW CALIFORNIA LIFE HOLDINGS, INC., AURORA NATIONAL LIFE ASSURANCE COMPANY, ARTEMIS, S.A. ARTEMIS FINANCE, S.N.C., ARTEMIS AMERICA, <br><br>                    Defendants. | Case No. CV-01-01339 AHM (CWx) <br><br> **JUDGMENT ON SIERRA'S CLAIMS AGAINST DEFENDANT JEAN-FRANCOIS HENIN** <br><br> The Honorable A. Howard Matz |

Pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, this

Court hereby enters this judgment (the "Corrected Sierra Judgment") in this matter

in favor of Plaintiff Sierra National Insurance Holdings, Inc. and Georgia Lee, as

Receiver for Sierra National Insurance Holdings, Inc. (collectively "Sierra"), and

against defendant Jean-Francois Henin ("Henin") in the amount of $10,846,246,

1   plus interest from December 27, 2005 at the rate of 4.37%, compounded annually,

2   until satisfied.

3           Although the judgment on Sierra's behalf against Henin, filed on

4   December 22, 2005 and entered on the Court's docket on December 27, 2005 (the

5   "Original Sierra Judgment"), met all requirements for enforcement in the United

6   States, this Court has been advised that the courts of France have withheld

7   enforcement of the Original Sierra Judgment because it does not sufficiently

8   describe the wrongful actions of Henin on which it is based, or the manner in

9   which the Court determined its amount.

10          Accordingly, out of respect for the courts of France, and to ensure

11   enforcement of this judgment, this Court hereby enters this Corrected Sierra

12   Judgment to supply the additional information the French courts require.

13          Rule 60(a) permits a court to correct "a mistake arising from oversight

14   or omission whenever one is found in a judgment, order, or other part of the

15   record." Fed. R. Civ. P. 60(a). The rule does not permit this Court to substantively

16   change a judgment, but the Court may properly invoke Rule 60(a) to make a

17   judgment reflect "what the court originally intended to do." *Robi v. Five Platters,*

18   *Inc.*, 918 F.2d 1439, 1445 (9th Cir. 1990). This Corrected Sierra Judgment

19   changes no substantive provision of the Original Sierra Judgment, nor does it

20   reflect any change in the reasoning that led this Court to enter that judgment.

21   Rather, it incorporates only facts and evidence before the Court at the time of the

22   Original Sierra Judgment, and it supplies the additional information required to

23   assure its enforcement in France.

24          This Corrected Sierra Judgment is entered in response to a duly

25   noticed motion by Sierra asking this Court to correct the Original Sierra Judgment

26   and the separate judgment against Henin entered on the California Insurance

27   Commissioner's (the "Commissioner") behalf (collectively, the "Original

28   Judgments").

Henin's attorneys filed an opposing brief and also presented oral argument in opposition to Sierra's motion seeking correction of the Original Judgments at a hearing on September 20, 2010. In accordance with standard practice, the Court directed Sierra to propose draft forms of judgment. Henin's counsel received those drafts on October 29, 2010 and were given two weeks to reply. This Corrected Sierra Judgment reflects the ruling of the Court after considering the draft proposed by Sierra and the response of Henin's attorneys.

## I.    PROCEDURAL HISTORY

Sierra filed its original complaint in this action against numerous defendants ("Defendants"), including Henin, on January 30, 2001, and served the summons and complaint on him. Henin filed an answer to that complaint on June 14, 2001 and thereby submitted to the jurisdiction of this Court. He also filed a cross-claim on that same date against defendants Credit Lyonnais, Altus Finance S.A. ("Altus"), which was a subsidiary of Credit Lyonnais, Consortium de realisation, and CDR Entreprises. Sierra filed its First Amended Complaint (the "Complaint") on July 11, 2001. Henin filed an answer to the First Amended Complaint and another cross-complaint on January 14, 2002.

The primary claims against Henin are that he engineered a fraud and a conspiracy through secret *contrats de portage* that enabled Defendants to acquire control of Executive Life Insurance Company ("ELIC"), then California's largest life insurance company, in violation of both state and federal laws. As a result of the fraud, Sierra, as a competing bidder, was denied the opportunity to bid in a fair process.

Henin participated fully in the discovery process testifying, with counsel, for eleven days of deposition in Paris. He received notice of the date on which trial of the case would take place and filed a signed declaration with this Court stating that he would appear at trial through counsel. Order of January 12, 2005, at 2.

1   He did not do so.  Neither he nor his counsel appeared at the trial.

2   Accordingly, a default was entered against him on March 8, 2005.  Order for Entry

3   of Default Against Defendant Jean-Francois Henin on All Issues of Liability to

4   Sierra.

5   Rule 55 of the Federal Rules of Civil Procedure requires that where

6   the clerk cannot enter a judgment of default, a "party must apply to the court for a

7   default judgment." Fed. R. Civ. P. 55(b)(2).  Accordingly, when Henin failed to

8   appear for trial, Sierra applied for a default judgment against him, after due notice

9   to him.  Notice and Request for Entry of Default Against Defendant Jean-Francois

10  Henin (Feb. 18, 2005).  Henin made no response to that application.

11  Upon a default the court generally accepts as true the plaintiff's

12  pleaded factual allegations.  *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th

13  Cir. 1977).  However, even upon a default, entry of a default judgment "is entirely

14  within the court's discretion and may be refused where the court determines no

15  justifiable claim has been alleged or that a default judgment is inappropriate for

16  other reasons." *Doe I v. Qi*, 349 F. Supp. 2d 1258, 1271 (N.D. Cal. 2004).

17  After determining that an award against Henin and on behalf of Sierra

18  was warranted, and fixing its amount, this Court entered the Original Sierra

19  Judgment on December 27, 2005.

20

21  **II.   FACTS AND EVIDENCE SUPPORTING THE JUDGMENT
      AGAINST HENIN IN FAVOR OF SIERRA**

22  This Court wishes the courts of France to know that there is ample

23  evidence of Henin's fraudulent conduct to support the finding of liability against

24  him.  By the time the Original Judgments were entered against Henin in December

25  2005, this Court had managed the Commissioner's companion case for nearly

26  seven years and the Sierra case for nearly five years.  It had presided over

27  numerous motions involving factual issues in this case as well as the full trial in the

28  Commissioner's case against another Defendant, Artemis, which also involved

4

1    such issues.  The principal facts establishing Henin's liability, which the Court
2    took into account in entering the Original Sierra Judgment, can be summarized as
3    follows.

4              In 1991, the Commissioner determined that ELIC was in danger of
5    failing due to its investment in large quantities of so-called "junk" bonds which, at
6    the time, appeared to be in danger of losing much of their value.  *See* Complaint
7    ¶¶ 33-36.  The Commissioner then conducted what amounted to a public auction of
8    ELIC's assets, both its insurance business and its bond portfolio.  *Id.* at ¶¶ 36-41.
9    Among the rival bidders were Sierra and a syndicate which included Credit
10   Lyonnais, Altus, and MAAF.  That syndicate was awarded the bid and reaped large
11   profits.  *Id.* at ¶¶ 49-50.

12             Credit Lyonnais and Altus could not legally acquire ELIC's insurance
13   business because doing so would violate the laws of both the United States and
14   California.  *Id.* at ¶ 51.  California Insurance Code § 699.5 provided that a
15   government entity may not own, operate, or control a California insurance
16   company.  *Id.*  At the time of the ELIC acquisition, Credit Lyonnais and Altus
17   were owned by the government of France.  *Id.* at ¶¶ 9, 83.

18             In addition, the federal Bank Holding Company Act, 12 U.S.C. § 1843
19   *et seq.*, provided that a bank holding company could not directly or indirectly own
20   a life insurance company  *Id.* at ¶ 51.

21             Thus, the acquisition or control of ELIC's insurance business by Altus
22   and Credit Lyonnais would violate both California and federal law.

23             During the bidding process for ELIC, the Commissioner and others
24   had informed Henin that any proposed acquisition of ELIC would have to comply
25   with the provisions of the California and federal laws.  *Id.  See also* March 2, 2005
26   Tr. at 74:17-75:5, 100-21-101:8.  Henin understood these legal restrictions and
27   represented — falsely — that he would comply with them.  *See, e.g.*, April 9, 1991
28   Letter from Henin to Garamendi, LA/AA 14778-14790 at 14778 ("[n]either the

investment vehicle, nor the other investors will be foreign government controlled"). Notwithstanding these representations, Henin engineered a scheme to violate these state and federal laws. Altus, through Henin as its Chief Executive Officer, identified MAAF, a French insurance company, as a partner with Altus and Credit Lyonnais in their bidding syndicate. *See* Complaint ¶ 52; March 22, 2005 Tr. at 175:19-182:11.

On August 7, 1991, the Commissioner announced that he had signed an agreement with the Altus/Credit Lyonnais syndicate. *See* Complaint at ¶¶ 39-40. The previous day, on August 6, 1991, Altus and MAAF entered into *contrats de portage*, which were amended and re-executed on or about November 15, 1991, signed by Henin. Trial Exhibit 434, CDR 0013863-869; Trial Exhibit 436, CDR 0013884-88; Trial Exhibit 1155, S&A 5229-33; Trial Exhibit 1157, M000007-19; Nov. 15, 1991 Memorandum of Understanding Between MAAF and Altus, M005564-70. Henin also instructed his employee to sign the August *contrats de portage*. March 16, 2005 Tr. at 86:17-89:19. Henin never informed the Commissioner of these agreements, and the Commissioner was unaware of them. *See* Complaint ¶¶ 63-64, 103; March 22, 2005 Tr. at 192:15-22; March 2, 2005 Tr. at 74:17-24, 98:24-103:14; March 3, 2005 Tr. at 42:7-17.

The *contrats de portage* provided that MAAF would act as a front for Altus in acquiring the insurance business of ELIC when, in fact, Altus, and hence Credit Lyonnais, would own and control that business. An agreement entitled "Promise to Purchase Stock" provided that MAAF agreed to sell all the shares it would obtain in the ELIC insurance business to Altus at a date in the future. Trial Exhibit 434, CDR 0013863-869. The agreement was subject to an express secrecy provision. *Id.* at 0013867. An agreement entitled "Management Agreement" provided that while MAAF would hold shares in the ELIC insurance business, it would only exercise its rights as a shareholder at the direction of Altus and in order to implement Altus' strategy with respect to such holdings. Trial Exhibit 436,

1   CDR 0013884-888 at 0013885.  The second agreement was also subject to an

2   express secrecy provision.  *Id.* at 0013887.

3           The *contrats de portage* were intended to make it appear as if MAAF

4   and other co-investors were legitimate, independent investors and participants in

5   the syndicate, but they secretly gave Altus and Credit Lyonnais explicit control

6   over ELIC's bond portfolio and insurance business. *See* Complaint ¶¶ 52-54, 82.

7   The syndicate represented, in writing, to the Commissioner and to the banking

8   authorities of the United States that ELIC's insurance business would be acquired

9   by MAAF, and that Credit Lyonnais had, and would exercise, no control over

10  MAAF.  *Id.* at ¶¶ 75-81.  Not only was the existence of the *contrats de portage* not

11  disclosed to the Commissioner and the U.S. banking authorities, as required by

12  law, but their existence was repeatedly denied by Defendants.  *Id.* at ¶¶ 63, 71, 73,

13  75-93.

14          The Altus/MAAF bid violated both state and federal laws by giving

15  Altus and Credit Lyonnais control of the ELIC insurance business, and it could not

16  legally be accepted.  Unaware of the illegal nature of the Altus/MAAF bid because

17  the *contrats de portage* had been kept secret, on November 14, 1991, the

18  Commissioner announced his selection of the Altus/MAAF bid for the ELIC bonds

19  and insurance business over the competing bid of Sierra.  *Id.* at ¶ 49.  Had the

20  Commissioner known of the secret *contrats de portage*, the Commissioner would

21  not have approved the Altus/MAAF bid.  *Id.* at ¶¶ 5, 51, 64.  Indeed, he could not

22  have approved the bid because it was illegal under both California and federal law.

23  *Id.* at ¶¶ 5, 63-64.  By the illegal acts directed by Henin, Sierra was denied the right

24  to fairly bid for the ownership of the ELIC bonds and insurance business and it

25  thus suffered financial damages.  *Id.* at ¶¶ 44, 117.

26          Henin, at all relevant times the Chief Executive Officer of Altus, was

27  one of the Defendants who committed these wrongful acts which enabled them to

28  acquire ELIC.  Sierra's Complaint contained allegations specifying false

JUDGMENT ON SIERRA'S CLAIMS AGAINST DEFENDANT JEAN-FRANCOIS HENIN

A/73569331.1/2023563-0000313960

1    statements made by Defendants and by Henin individually to the Commissioner

2    and to other regulatory agencies.  *Id.* at ¶¶ 75 and 103.  Sierra and the

3    Commissioner offered competent proof that Defendants' profits from the

4    transaction exceeded $4.2 billion.  Revised Expert Report of D. Paul Regan at 2.

5            At the September 20, 2010 hearing on Sierra's motion to correct the

6    Original Judgments this Court itself stated that Henin was "one of the key

7    architects of this fraud," and that he "is still fighting to protect what the record

8    shows were some ill-gotten and very substantial profits and gains that he derived

9    from what he did."  September 20, 2010 Hearing Transcript ("Hearing Tr."), at

10   7:17-18, 7:20-22.

11           This Court provides this additional information to the courts of France

12   for their consideration should Henin attempt to repeat his claim that, had he chosen

13   to defend himself at trial, he would have prevailed.  Henin had the opportunity to

14   appear at trial, through counsel or otherwise, to address the claims, and he declined

15   to do so contrary to his representations to this Court.[1]

16

17

18   _____

19

20   [1]  Should Henin attempt to renew his claim of innocence, this Court wishes the French

21   court to know that, in the criminal case brought against him for his involvement in
     these matters, Henin pled guilty to felony charges that he had "caused Credit
     Lyonnais to make false statements concerning material facts" to the Federal

22   Reserve Bank of New York and the Board of Governors and that he "well knew
     [that] these representations were false and misleading."  Plea Agreement Between

23   the United States Attorney's Office and Defendant Jean-Francois Henin (July 21,
     2006) at Ex. A, ¶¶ 33-35.  These criminal charges were pending at the time of the

24   Original Sierra Judgment.  Henin entered this plea pursuant to the procedure
     described in the case of *North Carolina v. Alford*, 400 U.S. 25 (1970).  For civil

25   purposes, an *Alford* plea is the full equivalent of a guilty plea.  *See Blohm v.
     Comm'r of Internal Revenue*, 994 F.2d 1542, 1554-55 (11th Cir. 1993).  Thus, in

26   this case, the French court may assume that Henin has admitted being guilty of the
     criminal acts described in his plea agreement.

27

28

JUDGMENT ON SIERRA'S CLAIMS AGAINST DEFENDANT JEAN-FRANCOIS HENIN

A/73569331.1/2023563-0000313960

**III.     THE BASIS FOR THIS COURT'S AWARD TO SIERRA**

A party who fails to appear at trial after receiving due notice of it does not thereby admit to the amount of damages to be assessed. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Rather, the court must make that independent determination. *See Pope v. United States*, 323 U.S. 1, 12 (1944). In assessing the amount of damages to award against a defaulting party, the courts have wide discretion. *See Jones v. Winnepesaukee Realty,* 990 F.2d 1, 4 (1st Cir. 1993) (*citing Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 321 (2d Cir. 1986)).

Had this case gone to trial against all Defendants, Sierra was prepared to present expert testimony that Defendants' wrongful acts had deprived it of profits totaling $3,367,596,793, plus interest. *See* Expert Report on Behalf of Sierra National Insurance Holdings, Inc. by Alan J. Cox, David J. Fishbaum, and Craig Merrill (July 12, 2004). Henin submitted no objection or rebuttal to this evidence despite the fact that Rule 55 permitted him such an opportunity.

This Court specifically "determined that Sierra is entitled to compensatory damages" but it concluded that "[t]he *amount* it claims as lost profits is too speculative to award . . . ." Order re Sierra's Motion for Default Judgment Against MAAF Defendants (Dec. 7, 2005) ("Order"), at 2:25-26, 4:14-15 (emphasis supplied).

In setting the amount of compensatory damages to award Sierra against Henin, the Court took into account the central role he played in Defendants' fraudulent scheme, but also the fact that, as an individual, he did not benefit to the same extent as the corporate defendants. Balancing these considerations, the Court determined to enter judgment against Henin, and in favor of Sierra to compensate it for its losses, in the amount of $10,846,246, with interest to accrue thereon in accordance with law.

1    The fact that this amount was identical to the amount this Court

2  awarded the Commissioner did not mean that the two awards were duplicative or

3  overlapping.  At the September 20, 2010 hearing this Court made that clear:

4           What [Henin] did was deceive both of them.  His conduct

5           was comparable -- the impact may have been slightly

6           different because of the different theories that one was

7           permitted to pursue than the other, but what your client

8           did had the same impact -- well, it wasn't the same

9           impact because Sierra never got the deal, but it thwarted

10          Sierra's prospects of getting the deal . . ..

11  Hearing Tr., at 18:1-7.

12    The judgment in favor of the Commissioner was based on principles

13  of restitution and represented the amount that Henin personally gained at the

14  expense of the ELIC estate as a result of his fraudulent conduct.  The damages

15  awarded to Sierra were to compensate it for the loss it suffered as a result of being

16  denied the opportunity to participate in a fair bidding process.  While Sierra

17  offered competent evidence that the losses it suffered exceeded $3 billion, the

18  Court determined that only a portion of those losses should be allocated to Henin.

19    In assessing what portion of Sierra's losses to assess against Henin, this

20  Court concluded that a fair, indeed conservative, measure would be the amount of

21  Henin's personal gain.  Henin personally received more than $6 million from his

22  fraudulent conduct.  Revised Expert Report of D. Paul Regan at 2, 18.  As a result,

23  the judgment entered against Henin on behalf of Sierra was for the same amount as

24  the judgment entered on behalf of the Commissioner.  This does not mean that the

25  two judgments were duplicative.  The harms Henin inflicted on the Commissioner

26  and Sierra were distinct.  The Commissioner was injured to the extent of Henin's

27  personal gain at the expense of the ELIC estate.  Sierra was injured by being

28  denied the opportunity to participate in a fair competition for ELIC's assets.

1    The claims of Sierra and the Commissioner were thus independent

2  claims and are both entitled to satisfaction.  As this Court explained at the hearing

3  on Sierra's motion for corrected judgments, the amount awarded to Sierra

4  represented "an attempt by the Court to apply a figure that was . . . conservative

5  but founded in the evidence . . . [and] was meant to provide appropriate remedy for

6  the prevailing parties without being outlandish."  Hearing Tr., at 15:4-14.

7    Neither this Corrected Sierra Judgment nor the Original Sierra

8  Judgment includes a provision for punitive damages against Henin.  Although this

9  Court determined that "the MAAF Defendants and Defendant Henin acted with

10  malice, fraud and oppression, thereby permitting the imposition of punitive

11  damages," it awarded punitive damages *only* against the MAAF defendants.

12  Order, at 3:2-4, 9:5-6.

13    In addressing the issue of punitive damages, this Court stated: "As for

14  punitive damages, it is sufficient to note that the MAAF Defendants' co-

15  conspirators' responses to the inquiry made by the Commissioner's counsel

16  following Sierra's November 12, 1991 memorandum were not only false but were

17  in direct response to concerns that Sierra had communicated in its -- Sierra's -- last

18  ditch effort to win the bid.  *The MAAF Defendants'* intent to interfere maliciously

19  and fraudulently with Sierra's bid is exemplified by that conduct."  Order, at 8:20-

20  9:4 (emphasis supplied).  Accordingly, this Court concluded: "[P]unitive damages

21  are appropriate as to *the two MAAF entities*."  *Id.* at 9:5-6 (emphasis supplied).  In

22  that order this Court repeatedly stated that it was awarding punitive damages

23  against the MAAF Defendants.  *Id.* at 8:3-5, 8:20-9:2, 9:4-6.  It made no such

24  statements and made no such award against Henin.

25    Nor did this Court intend that the judgment awarded Sierra be subject

26  to offset or reduction as a result of the award to the Commissioner, or any award or

27  settlement from any other party to the Commissioner or Sierra.  That is because the

28  judgment against Henin is to compensate Sierra for the losses it suffered as a result

11

1   of Henin's tortious conduct and not that of any other party.  Indeed, the order

2   authorizing its entry specifically mentioned Sierra's other recoveries.  *See* Order, at

3   n.1.

4          Pursuant to 28 U.S.C. § 1961 the Original Sierra Judgment has

5   continued to accrue interest at the rate of 4.37%, compounded annually.  Interest

6   shall continue to accrue on this corrected judgment at the rate of 4.37% from

7   December 27, 2005 until the judgment is paid.

8          In accordance with Federal Rule of Civil Procedure 54(b), the Court

9   finds that there is no just reason for delay and that this constitutes a corrected final

10  judgment entered pursuant to Federal Rule of Civil Procedure 60(a).  The Court

11  will retain jurisdiction of this cause for such other and further orders as may be

12  necessary.

13

14          IT IS SO ORDERED.

15

16

17  Dated:   November 24, 2010

18                                              _____
                                                      The Honorable A. Howard Matz
19                                                     United States District Judge

20

21

22

23

24

25

26

27

28

12